Argued and submitted September 25, 2000, affirmed on appeal; reversed on cross-appeal April 25, 2001

NORTHWEST MARKETING CORPORATION,
a Washington corporation,
*Appellant - Cross-Respondent,*

*v.*

FORE-WARD INVESTMENTS, INC.,
an Oregon corporation,
*Respondent - Cross-Appellant.*

FORE-WARD INVESTMENTS, INC.,
an Oregon corporation,
*Third-Party Plaintiff - Cross-Appellant,*

*v.*

George "Pat" LOOMIS,
and Loomis & Loomis, a partnership of
George "Pat" Loomis and Beverly Loomis,
and Northwest Marketing Corporation,
a Washington corporation,
*Third-Party Defendants - Cross-Respondents,*

*and*

Beverly LOOMIS,
*Third-Party Defendant.*

FORE-WARD INVESTMENTS, INC.,
an Oregon corporation,
*Counterclaim Plaintiff - Cross-Appellant,*

*v.*

NORTHWEST MARKETING CORPORATION,
a Washington corporation,
*Counterclaim Defendant - Cross-Respondent.*

(16-96-08168; CA A105141)

22 P3d 1230

Terence J. Hammons argued the cause for appellant - cross-respondent. With him on the briefs was Hammons & Mills.

K. Patrick Neill argued the cause for respondent - cross-appellant. With him on the briefs was Hershner, Hunter, Andrews, Neill & Smith, LLP.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiff initiated this action for breach of an exclusive marketing agreement, seeking $1,030,000 in damages. The trial court found for plaintiff but awarded only $4,500. Plaintiff appeals, arguing that the trial court erred in rejecting the bulk of its claims and awarding only $4,500. Defendant cross-appeals, arguing that the trial court erred in awarding even the $4,500, because the award was for a claim not properly before the court. After reviewing the record, we reject plaintiff's contentions on appeal without further discussion. We write only to address the cross-appeal, on which we reverse.

We state the facts in the light most favorable to plaintiff, which prevailed at trial. Plaintiff is a corporation, the principals of which have extensive experience in the development of mobile home parks. Defendant is a family corporation formed to develop a parcel of property as a mobile home park. Defendant retained plaintiff to provide marketing services for the development. Plaintiff agreed to sell mobile homes to be placed on lots leased from defendant. Defendant agreed to pay plaintiff on a commission basis, in addition to any factory-authorized rebates. The parties also agreed that, in the event of a material breach, the nonbreaching party was required to give 60 days' written notice of the breach. If, after the 60 days, the breaching party did not cure, the nonbreaching party was authorized to terminate the agreement.

Sales did not meet expectations, and the parties fell into disagreement about whether to adjust the asking price for the homes. Defendant wanted to raise prices to cover costs, while plaintiff refused to attempt to sell at the higher prices. Ultimately, plaintiff declared that defendant's insistence on increasing the prices constituted a breach of the agreement, and it ceased to perform further.

Plaintiff then initiated this action for breach of contract. Plaintiff alleged that by, among other things, insisting on the higher prices, defendant breached the exclusive marketing agreement and deprived it of $1,030,000 in future lost profits. Nowhere in the complaint is there an allegation that

defendant had failed to pay for any sales already completed; the complaint requests only damages for future lost profits. Defendant answered, denying the breach of contract claim and asserting several cross-claims against plaintiff's principals.

During the trial, the court asked several questions by way of background concerning the way the parties did business. Evidence surfaced that plaintiff had sold three homes, but the homes had not been delivered or installed by the time that plaintiff had quit. Because plaintiff was not present to work on the delivery and installation of the three homes, defendant paid only half of the $3,000 commission on each, for a total of $4,500. The trial court stated that it was not certain of the relevance of that evidence to the claims in this case but that it might be pertinent to possible settlement discussions between the parties.

No further mention of that evidence was made until plaintiff's closing argument, when plaintiff contended for the first time that its damages should include $4,500 for the other half of the commissions on the three sales. Defendant objected that the claim for unpaid commissions on completed sales was not within the scope of the claims before the court. The court ultimately rejected all of plaintiff's other claims, but it awarded the $4,500 in unpaid commissions on the three home sales and, because plaintiff prevailed on that "claim," awarded attorney fees, as well.

On cross-appeal, defendant assigns error to the trial court's award of $4,500. Defendant argues that the exclusive marketing agreement did not require it to pay the full commission on only partially completed sales. In any event, defendant argues, it was error to award damages on a claim not asserted in the complaint. Plaintiff argues that the claim was implicit in its pleadings, at least in the sense that the $4,500 represents a form of lost "profits." In the alternative, plaintiff argues that the issue was tried with defendant's consent.

■ ■ It is generally error to award damages on an unpleaded theory. As we explained in *Cheryl Wilcox Property Management v. Appel*, 110 Or App 90, 94, 821 P2d 428 (1991):

"Ordinarily, a judgment must be responsive to the issues framed by the pleadings, and a trial court usually has no authority to render a decision on an issue not presented for determination."

*See also Belgarde v. Marlia*, 117 Or App 191, 193, 843 P2d 981 (1992) (trial court generally lacks authority to award relief on claim not pleaded). Under ORCP 23 B, however, the parties can try issues not raised in the pleadings by "implied consent." *Cheryl Wilcox Property Management*, 110 Or App at 94.

In this case, nothing in the complaint fairly raised the claim for unpaid commissions on the three home sales. There was no mention of any of the facts underlying the claim and no mention of any actual sales for which commissions were unpaid. The complaint mentioned only lost *future* profits occasioned by various breaches that have nothing to do with past, completed, sales.

Nor is there any evidence that the parties tried the matter by consent, express or implied. Indeed, when testimony was elicited it was in the context of the history of the sales transactions generally; there was no mention of any claim for the unpaid earned commissions. Indeed, it was the trial court that first mentioned the possibility. Even then, the trial court questioned whether it was appropriate to consider the matter in the context of the trial and suggested that it might nevertheless be a fruitful consideration for settlement purposes. The first mention of any claim for unpaid earned commissions came at closing argument, at which point defendant promptly and vigorously objected.

We conclude that the trial court erred in awarding $4,500 on a claim that was not properly before it. Our decision necessarily means that the award of attorney fees to plaintiff must be reversed, as well.

Affirmed on appeal; reversed on cross-appeal.