
**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>BRYCE PELTIER and KRISTINE DIANE<br>PELTIER,<br><br>　　　　　Debtors. | BAP No. OR-22-1000-FBG<br><br>Bk. No. 3:21-bk-30450-DWH<br><br>Adv. No. 3:21-ap-03018-DWH |
| BRYCE PELTIER; KRISTINE DIANE<br>PELTIER,<br><br>　　　　　Appellants,<br>v.<br>VAN LOO FIDUCIARY SERVICES, LLC,<br>　　　　　Appellee. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the District of Oregon
David W. Hercher, Bankruptcy Judge, Presiding

Filed – August 16, 2022
Ordered Published – September 12, 2022

APPEARANCES:
Michael Fuller of OlsenDaines argued for appellants;
Darlene Pasieczny of Samuels Yoelin Kantor LLP argued for appellee.

Before: FARIS, BRAND, and GAN, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

The Oregon state court entered a judgment against Kristine Diane Peltier and Bryce Peltier for financial elder abuse of a family member. The Peltiers filed for chapter 7[1] bankruptcy protection, and appellee Van Loo Fiduciary Services LLC ("Van Loo") sought to have the judgment debt declared nondischargeable under §§ 523(a)(2), (4), and (6). The bankruptcy court entered judgment against Kristine[2] on the § 523(a)(4) claim, based on the issue preclusive effect of the state court judgment.

Kristine appeals, arguing that issue preclusion was inappropriate because the issues that the state court necessarily determined were not the same as those before the bankruptcy court.

We disagree with the bankruptcy court's reasoning but agree with its conclusion. We AFFIRM.

## FACTS

### A.    The state court judgment

Van Loo is the court-appointed conservator for Kristine's mother, Leah D. Hudson, and the personal representative for the estate of Jon W. Hudson, who was Mrs. Hudson's husband and Kristine's father.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We sometimes refer to Kristine and Bryce by their first names for convenience and clarity. We intend no disrespect.

In June 2020, Van Loo filed a complaint in the Oregon circuit court for financial elder abuse, unjust enrichment, and breach of fiduciary duty against Kristine, Bryce, Kristine's sister, and her sister's husband.

Van Loo alleged that, while the Hudsons suffered from declining mental and physical health, the defendants misused the Hudsons' funds, credit, and assets to benefit themselves. It alleged that Kristine had accomplished this by abusing powers of attorney that the Hudsons had granted her.

The complaint stated three claims for relief: (1) elder abuse under Oregon Revised Statutes ("ORS") 124.110 against all defendants; (2) unjust enrichment against all defendants; and (3) breach of fiduciary duty against Kristine.

The Peltiers did not respond to the complaint, and the circuit court entered an order of default against the Peltiers.[3] After a prima facie hearing at which Van Loo's principal testified, the court stated that "it's very clear that . . . the plaintiffs have made a prima facie showing of elder abuse, unjust enrichment, and a breach of fiduciary duties by the remaining defendants, so I do find in favor of the plaintiffs on their claims." It did not offer any detailed findings or conclusions.

The circuit court granted Van Loo a limited judgment[4] against the

---

[3] The other defendants apparently settled with Van Loo and were dismissed from the case.

[4] A "limited judgment" under ORS 18.005(13) and Oregon Rule of Civil

Peltiers on all claims for relief. Pursuant to ORS 124.100, it awarded Van Loo treble damages totaling $1,069,606.86 against Kristine and Bryce and an additional judgment against Kristine for treble damages of $887,276.16 – exactly what Van Loo requested. It also issued a second limited judgment awarding Van Loo attorneys' fees and costs and conservator fees.

## B.    The chapter 7 bankruptcy case and adversary proceeding

The Peltiers sought chapter 7 bankruptcy protection. Van Loo filed a timely complaint to determine the nondischargeability of the state court judgment debts pursuant to §§ 523(a)(2)(A), (4), and (6).

As to § 523(a)(4), Van Loo alleged that the Peltiers had committed fraud or defalcation by a fiduciary, larceny, and embezzlement.

The Peltiers filed an answer generally denying the allegations in the adversary complaint.

## C.    Van Loo's motion for summary judgment

Van Loo filed a motion for summary judgment on all claims. It argued that the state court's findings were entitled to issue preclusive effect, so the judgments were nondischargeable under §§ 523(a)(2), (4), and (6).

The Peltiers opposed the motion for summary judgment. They argued that Van Loo could not establish each element of issue preclusion under Oregon law. The Peltiers contended that the issues were not

Procedure 67 B is essentially the same as a judgment on fewer than all claims or parties under Civil Rule 54(b).

4

identical and the issues were not "necessarily decided." They emphasized that the state court had not made any findings on the record. With regard to § 523(a)(4), they argued that the default judgment did not establish gross recklessness or felonious intent necessary to a nondischargeability ruling.

After a hearing, the bankruptcy court announced that it would grant summary judgment against Kristine, but not Bryce, and only under § 523(a)(4).

The bankruptcy court recited the five elements of issue preclusion under Oregon law. It noted that the Peltiers conceded that Oregon affords issue preclusive effect to default judgments. It also held that the Peltiers had a full and fair opportunity to litigate the state court proceedings and that issue preclusion was appropriate for this type of proceeding.

It acknowledged that, because the state court "made no specific findings of fact, except for its quantification of damages, it's difficult to know exactly what was determined." Therefore, to determine the issue preclusive effect of the default judgment, the court analyzed "which of the many allegations of the complaint are the minimum that the [state] Court had to find to enter its judgment."

The bankruptcy court held that issue preclusion did not bar relitigation of any issue under the §§ 523(a)(2)(A) and (6) claims. However, it held that the state court's elder abuse findings satisfied § 523(a)(4) as to Kristine. It explained that § 523(a)(4) requires that the debt arose from either fraud or defalcation while acting in a fiduciary capacity or

embezzlement or larceny. It quickly rejected embezzlement or larceny, because the complaint did not allege that the Peltiers feloniously took property from the Hudsons.

However, the bankruptcy court said that the allegations against Kristine aligned with defalcation while acting in a fiduciary capacity. It stated that Kristine was a fiduciary based on her power of attorney and concluded that the state court must have found defalcation.

Later, Van Loo agreed to dismiss its claims against Bryce. The bankruptcy court entered judgment against Kristine and declared nondischargeable the first limited judgment debt for $1,069,606.86 plus post-judgment interest.

The Peltiers timely appealed.[5] Van Loo did not cross-appeal.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in granting Van Loo summary judgment on its § 523(a)(4) nondischargeability claim against Kristine.

---

[5] Counsel for the Peltiers acknowledged at oral argument that, although both Bryce and Kristine filed the notice of appeal, Bryce was not a party to the appeal. Van Loo argues that the judgment should be affirmed as to Bryce, with costs awarded to Van Loo. We DENY this request, because Bryce was a prevailing party, not an aggrieved party, and was therefore not entitled to appeal, and Van Loo did not cross-appeal that portion of the judgment.

6

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's decisions to grant summary judgment and to except a debt from discharge. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

"We also review de novo the bankruptcy court's determination that issue preclusion was available. If issue preclusion was available, we then review the bankruptcy court's application of issue preclusion for an abuse of discretion." *In re Plyam*, 530 B.R. at 461 (quoting *Black v. Bonnie Springs Fam. Ltd. P'ship (In re Black)*, 487 B.R. 202, 210 (9th Cir. BAP 2013)).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

"We may affirm on any ground fairly supported by the record." *Jimenez v. ARCPE 1, LLP (In re Jimenez)*, 613 B.R. 537, 543 (9th Cir. BAP 2020).

## DISCUSSION

Kristine argues that the bankruptcy court erred in granting Van Loo summary judgment under § 523(a)(4) because it was inappropriate to afford the state court judgment issue preclusive effect.

Under Civil Rule 56(a), made applicable by Rule 7056, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden of demonstrating an absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). We must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in her favor. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).

We hold that the record before the bankruptcy court was sufficient to support summary judgment on Van Loo's § 523(a)(4) claim.

## A.    Issue preclusion in nondischargeability proceedings

Issue preclusion applies in nondischargeability actions under § 523(a). *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991).

Federal courts must give full faith and credit to state court judgments. 28 U.S.C. § 1738. This means that the bankruptcy court was required to give the Oregon state court's judgment the same preclusive effect it would be given by other Oregon courts. *See Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir. 2001). We thus apply Oregon issue preclusion law.

Under Oregon law, "[i]ssue preclusion applies to preclude relitigation of an issue or fact when that issue or fact has been determined by a valid and final determination in a prior proceeding." *McCall v. Dynic USA Corp.*, 906 P.2d 295, 297 (Or. Ct. App. 1995) (cleaned up). Issue preclusion is appropriate if five required elements are met:

1. The issue in the two proceedings is identical.

2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding [and]

5. The prior proceeding was the type of proceeding to which this court will give preclusive effect.

*Nelson v. Emerald People's Util. Dist.*, 862 P.2d 1293, 1296-97 (Or. 1993) (citations omitted). "[T]he party asserting issue preclusion bears the burden of proof on the first, second, and fourth factors, after which the party against whom preclusion is asserted has the burden on the third and fifth factors." *Barackman v. Anderson*, 167 P.3d 994, 999 (Or. Ct. App. 2007).

The fourth and fifth elements require no discussion. There is no doubt that Kristine was a party to both the state court case and the adversary proceeding and the state court case was the type of proceeding which may be afforded issue preclusive effect.

The third element requires only brief consideration. Kristine argued in the bankruptcy court that she was not afforded a full and fair opportunity to litigate the state court proceeding because she could not afford to obtain counsel. But under Oregon law, a party's choice not to respond to a complaint, or the party's inability to afford counsel, is not a denial of a full and fair opportunity to be heard for purposes of issue preclusion. *See id.* at 1000 n.3 ("The question under the third factor is whether plaintiff was denied the opportunity to adduce the evidence or make the arguments that she needed to prevail on her claim."); *Skeen v. Dep't of Hum. Res.*, 17 P.3d 526, 528-29 (Or. Ct. App. 2000) (Litigants are denied "full and fair opportunity" to be heard under *Nelson* if they establish either that "the procedures provided for . . . are insufficient to justify the application of issue preclusion or that they were not permitted to use those procedures."). Therefore, the third element was satisfied.

The first and second elements require more attention: (1) whether the issues in the two proceedings were identical; and (2) whether the issues were essential to the state court's judgment.

Kristine points out that the state court made no express findings. But this does not deprive its judgment of issue preclusive effect. Under Oregon law, a judgment has issue preclusive effect as to all issues that the court expressly decided **or** were necessary to the court's judgment. *Chase v. Gordon, Aylworth & Tami, P.C.*, Case No. 3:18-cv-568-AC, 2019 WL 5085417, at *7 (D. Or. Oct. 10, 2019) ("In Oregon, the doctrine of res judicata,

10

including collateral estoppel, as to matters essential to the judgment, applies to judgments by default. To satisfy the 'actually litigated and essential to a final decision' requirement, a prior court's resolution of an issue must either be apparent from the face of a judgment or order or, if not apparent from the face of a judgment or order, must have been necessary to the resolution of the prior adjudication." (cleaned up)); *Sturgis v. Asset Acceptance, LLC*, No. 3:15-CV-00122-AC, 2016 WL 223708, at *3 (D. Or. Jan. 19, 2016) ("[C]ourts in Oregon apply issue preclusion to cases where the first case ended in a default judgment and the defendant did not appear in court or otherwise take advantage of the opportunity to 'actually litigate' the issues at stake. Because an issue may be deemed 'actually litigated' in an action where a default judgment is entered after one party fails to appear or otherwise actually litigate the pertinent issue, analysis of this element should focus on whether the issue was 'essential to the [first] judgment.'" (citation omitted)).

Therefore, we will describe the required elements of § 523(a)(4) and compare those elements with what the state court must have necessarily decided to support its judgment on the statutory elder abuse claim.

**B.    Elements of § 523(a)(4)**

Section 523(a)(4) precludes the discharge of debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." In other words, because "while acting in a fiduciary capacity" does not modify "embezzlement" or "larceny," and the statute is written in the

11

disjunctive, a debt is nondischargeable if it was incurred due to (1) fraud or defalcation while acting in a fiduciary capacity, (2) embezzlement, or (3) larceny. *See Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275 (2013) ("The statutory provision makes clear that [embezzlement and larceny] apply outside of the fiduciary context[.]"); *Transamerica Com. Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991) ("Clearly, a debt can be nondischargeable for embezzlement under 523(a)(4) without the existence of a fiduciary relationship.").

### 1. Fraud or defalcation

Fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4) requires that "1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created." *Mele v. Mele (In re Mele)*, 501 B.R. 357, 363 (9th Cir. BAP 2013) (quoting *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1459 (9th Cir. 1997)).

"Defalcation" "includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase. We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock*, 569 U.S. at 269.

"To prevail on a nondischargeability claim under § 523(a)(4) the plaintiff must prove not only the debtor's fraud or defalcation, but also that the debtor was acting in a fiduciary capacity when the debtor committed

12

the fraud or defalcation." *Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 378 (9th Cir. BAP 2011). "The fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt. We consult state law to determine whether the requisite trust relationship exists." *In re Mele*, 501 B.R. at 363 (cleaned up).

### 2. Embezzlement and larceny

Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Littleton*, 942 F.2d at 555 (quoting *Moore v. United States*, 160 U.S. 268, 269 (1885)). Thus, the proponent of the nondischargeability determination must prove: "(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud." *Id.* (quoting *Nat'l Bank of Com. of Pine Bluff v. Hoffman (In re Hoffman)*, 70 B.R. 155, 162 (Bankr. W.D. Ark. 1986)). We have stated that "circumstances indicating fraud, as an element of embezzlement, is not coterminous with an intent to defraud . . . ." *Newman v. Lee (In re Newman)*, BAP Nos. CC-21-1228-GTL, CC-21-1250-GTL, 2022 WL 2100905, at *7 (9th Cir. BAP June 10, 2022); *see Phillips v. Estate of Ronald M. Arnold (In re Phillips)*, BAP No. WW-15-1178-TaKuJu, 2016 WL 7383964, at *5 (9th Cir. BAP Dec. 16, 2016) ("The finding required for a determination of § 523(a)(4) embezzlement is that Debtor's actions

13

indicated fraud. Such a determination is not synonymous with an intent to defraud as required under § 523(a)(2)(A).").

As for scienter, the U.S. Supreme Court has stated that "embezzlement requires a showing of wrongful intent." *Bullock*, 569 U.S. at 274. The Court noted that wrongful intent in this context has been described as "moral turpitude or intentional wrong" or "felonious intent." *Id.* (quoting *Neal v. Clark*, 95 U.S. 704, 709 (1877); *Moore*, 160 U.S. at 269-70). Further, in the criminal context, the Ninth Circuit has relied on the Seventh Circuit's statement that "cases indicate that the 'felonious' intent with which embezzlement is committed consists of the intent to appropriate or convert the property of the owner; the simultaneous intent to return the property or to make restitution does not make the offense any less embezzlement." *United States v. Anderson*, 850 F.2d 563, 565 (9th Cir. 1988) (quoting *United States v. Waronek*, 582 F.2d 1158, 1161 n.4 (7th Cir. 1978)).

Larceny is the "felonious taking of another's personal property with intent to convert it or deprive the owner of the same." *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1205 (9th Cir. 2010) (quoting 4 Collier on Bankruptcy ¶ 523.10[2] (15th ed. rev. 2008)). "Felonious is defined as 'proceeding from an evil heart or purpose; malicious; villainous . . . Wrongful; (of an act) done without excuse of color of right.'" *Id.* at 1205 n.4 (quoting *Elliott v. Kiesewetter (In re Kiesewetter)*, 391 B.R. 740, 748 (Bankr. W.D. Pa. 2008)).

There is only one difference between embezzlement and larceny: for

embezzlement, the perpetrator initially had the right to possess property and then stole it; while for larceny, the perpetrator stole property that the perpetrator never had a right to possess. *Hopper v. Lewis (In re Lewis)*, 551 B.R. 41, 50 (Bankr. E.D. Cal. 2016) ("Larceny is distinguished from embezzlement in that the original taking of the property was unlawful." (citation omitted)). The offenses of embezzlement and larceny require essentially the same mental state. As the Supreme Court held in *Bullock*, 569 U.S. at 269, the scienter required for the three offenses described in § 523(a)(4) – fiduciary fraud and defalcation, embezzlement, and larceny – are "akin," or closely related, to each other. *See Urban v. BSC West, LLC (In re Urban)*, BAP No. SC-13-1047-PaJuKu, 2014 WL 1492717, at *14 (9th Cir. BAP Apr. 16, 2014) (noting that *Bullock* "observed that the 'linquistic neighbors' of defalcation – larceny and embezzlement – have always required felonious intent. . . . [U]nder the *noscitur a sociis* rule, the Supreme Court decided that, for an exception to discharge, a defalcation, like fiduciary fraud, larceny and embezzlement, required a culpable state of mind."). We see no reason why the offenses of larceny and embezzlement should require different mental states.

## C.      Elements of elder abuse under ORS 124.100

The state court entered judgment on a claim for statutory elder abuse.[6] ORS 124.100(2) provides that "[a] vulnerable person who suffers

---

[6] We agree with the bankruptcy court that the state court's findings concerning unjust enrichment and breach of fiduciary duty were not entitled to issue preclusive

injury, damage or death by reason of physical abuse or financial abuse may bring an action against any person who has caused the physical or financial abuse or who has permitted another person to engage in physical or financial abuse." Financial abuse occurs "[w]hen a person wrongfully takes or appropriates money or property of a vulnerable person, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person." ORS 124.110(1)(a).[7]

Oregon courts have recognized that "there are four elements to a claim for financial abuse of an elderly or incapacitated person: There must be '(1) a taking or appropriation (2) of money or property (3) that belongs to an elderly or incapacitated person, and (4) the taking must be wrongful.'" *Gibson v. Bankofier*, 365 P.3d 568, 577-78 (Or. Ct. App. 2015) (quoting *Church v. Woods*, 77 P.3d 1150, 1153 (Or. Ct. App. 2003)).

Oregon courts have relied on the "ordinary" dictionary definition of

---

effect. Unjust enrichment does not necessarily require a culpable mind. *See Larisa's Home Care, LLC v. Nichols-Shields*, 404 P.3d 912, 921 (Or. 2017) (declining to adopt a precise test for unjust enrichment or impose a state-of-mind requirement). Similarly, intent is not an element of a breach of fiduciary duty claim under Oregon law. *See Chapman v. Bond (In re Bond)*, 548 B.R. 570, 577 n.5 (Bankr. D. Or. 2016) ("There is no intent or bad faith element needed to establish the [breach of fiduciary duty] claim . . . ." (citation omitted)). Further, as we have noted, "fiduciary capacity" under § 523(a)(4) refers only to an express trust, not to the wide range of relationships that can support a "fiduciary duty" under state law. *See Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986) ("The broad, general definition of fiduciary – a relationship involving confidence, trust and good faith – is inapplicable in the dischargeability context."); *In re Mele*, 501 B.R. at 363.

[7] ORS 124.110(1) also includes other types of financial elder abuse, but they are inapplicable to the present case.

"take": "to transfer into one's own keeping [or to] enter into or arrange for possession, ownership, or use of[.]" *Church*, 77 P.3d at 1153 (quoting Webster's Third New Int'l Dictionary 2330 (1993)).

Similarly, "appropriate" is not defined, but Oregon courts have relied on the "ordinary" definition of the word. The District Court for the District of Oregon considered the Oregon appellate courts' use of the term and relied on the dictionary definition ("to claim or use as if by an exclusive preeminent right") and the definition in the companion criminal statute (to "[e]xercise control over property of another, . . . permanently or for so extended a period or under such circumstances as to acquire the major portion of the economic value or benefit of such property"). *Russi v. Wissenback*, No. 6:18-CV-01028-AA, 2019 WL 1965830, at *3 (D. Or. Apr. 28, 2019) (quoting Webster's Third New Int'l Dictionary 160 (2002); ORS 164.005(1)).

Additionally, the plaintiff must show that the defendant took or appropriated money or property "wrongfully," meaning "in pursuit of an improper motive or by improper means. A defendant's motives or means may be wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession." *Gibson*, 365 P.3d at 578 (cleaned up); *see Church*, 77 P.3d at 1153 ("Improper means, for example, include 'violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation and disparaging falsehood.' The use of undue influence also constitutes an

17

'improper means,' in that it involves the procurement of an unfair advantage." (citation omitted)).

**D.    Comparison of issues in state court with issues in bankruptcy court**

The bankruptcy court held that the elder abuse claim could not satisfy the larceny or embezzlement element of § 523(a)(4) but that it satisfied the element of "defalcation while acting in a fiduciary capacity." We disagree with the bankruptcy court's reasoning but agree that it was appropriate to afford the elder abuse ruling issue preclusive effect.

In order to enter judgment on the statutory elder abuse claim, the state court had to find that Kristine (1) took or appropriated (2) money or property (3) that belongs to Mr. or Mrs. Hudson, who was incapacitated, and (4) the taking was wrongful. *See Gibson*, 365 P.3d at 577-78. But the court did not need to find that Kristine was a fiduciary for the Hudsons: ORS 124.110(1)(a) explicitly states that financial elder abuse is actionable "without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person." In contrast, the "fraud or defalcation" portion of § 523(a)(4) requires a finding that Kristine committed fraud or defalcation while acting as the Hudsons' fiduciary. Thus, a finding of a fiduciary relationship (or that Kristine violated her fiduciary duties) was not essential to the state court judgment based on statutory elder abuse.

The bankruptcy court focused on the allegations of the complaint, especially the allegation that Kristine abused the powers of attorney that

her mother and father had granted. At oral argument before the Panel, Van Loo's counsel took this one step further by contending that, because Kristine did not answer the complaint, its allegations were deemed admitted. This approach misses the mark because the preclusive effect of a judgment does not depend on what the plaintiff alleged and proved; rather, it depends on what the court expressly found or, if there are no express findings, what it had to find to support its judgment. *See Chase*, 2019 WL 5085417, at \*7. Because ORS 124.110(1)(a) does not require the existence of a fiduciary relationship, a finding of a fiduciary relationship was not "essential" to the state court's judgment.[8]

But the state court judgment does satisfy the "larceny" and "embezzlement" portions of § 523(a)(4).

The conduct proscribed by ORS 124.110(1)(a) is the same as either "larceny" or "embezzlement" under § 523(a)(4). To support its judgment for statutory elder abuse, the state court must have found that Kristine either "took" or "appropriated" the Hudsons' money or property. *See Gibson*, 365 P.3d at 578. The conduct involved in the offense of larceny is a "taking" of the property of another; embezzlement requires a "[mis]appropriation" of property. The match is exact.

---

[8] We also note that, even if Van Loo's allegations were determinative, the state court could have found elder abuse based on allegations in the complaint that were apparently accomplished independent of the powers of attorney, such as the appropriation of four automobiles, the mismanagement of the Hudsons' business, and the execution of a future receivables contract.

Similarly, there is no discernable difference between the mental states required by the Oregon elder abuse statute and "larceny" and "embezzlement" under § 523(a)(4). Under the Oregon statute, the conduct must be "wrongful," meaning that it was undertaken with "an improper motive or by improper means," such as by deceit, misrepresentation, or undue influence. *Gibson*, 365 P.3d at 578; *Church*, 77 P.3d at 1153. Under § 523(a)(4), embezzlement and larceny require "wrongful" or "felonious" intent, *Bullock*, 569 U.S. at 274, similar to "a culpable state of mind . . . involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant . . . behavior[,]" *id.* at 269. Although the words of these definitions are not identical, in substance we see no daylight between them.

Thus, the financial elder abuse claim presented issues "identical" to larceny and embezzlement under § 523(a)(4) that were "essential" to the state court judgment.

## CONCLUSION

The bankruptcy court did not err in granting Van Loo summary judgment on its § 523(a)(4) claim against Kristine. We AFFIRM.